**Opinion issued May 9, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00832-CV

———————————

## IN RE BLOOM BUSINESS JETS, LLC

---

**Original Proceeding on Petition for Writ of Mandamus**

---

*and*

———————————

## NO. 01-16-00915-CV

———————————

## BLOOM BUSINESS JETS, LLC, Appellant

## V.

## GLENCOVE HOLDINGS, LLC, Appellee

---

**On Appeal from the 164th District Court**
**Harris County, Texas**

1

**O P I N I O N**

Bloom Business Jets, LLC formerly crewed and maintained an airplane for Glencove Holdings, LLC under contract. Glencove terminated the contract after their business relationship soured and Bloom placed a lien on the plane. Glencove then sued Bloom in Harris County. Bloom responded by filing a special appearance to challenge personal jurisdiction and a motion to dismiss based on a forum-selection clause that requires all litigation involving their contract to be brought in Colorado. The trial court denied Bloom's special appearance and motion to dismiss. Bloom now petitions for a writ of mandamus regarding the denial of its motion to dismiss and appeals from the denial of its special appearance. Because we conclude that the trial court abused its discretion by refusing to enforce the forum-selection clause, we conditionally grant the writ and dismiss as moot Bloom's appeal.

**Background**

Glencove contracted with Bloom to crew and maintain an airplane but became dissatisfied with Bloom's services and terminated the contract within six months. After termination, Bloom placed a lien on the plane, contending that Glencove owed it $48,131.65 under the contract. Bloom subsequently lowered the lien amount to $23,157.47. Disputing the amount owed and contending that the lien was invalid and unenforceable, Glencove then filed this suit, after which Bloom lowered the lien

2

amount again to $13,143.57. In its suit, Glencove sought a declaration regarding the amount owed and the invalidity of the lien as well as an order requiring Bloom to release the lien. Glencove also alleged causes of action for breach of contract, fraud, and negligent misrepresentation. It premised the latter two causes of action on representations that Bloom allegedly made to Glencove about the plane's management and maintenance. Finally, Glencove requested a temporary restraining order directing Bloom to release the lien and to refrain from trying to take possession of the plane as well as a temporary injunction preventing Bloom from refiling the lien.

The trial court entered a temporary restraining order prohibiting Bloom from interfering with the operation or use of the airplane and set a hearing on Glencove's application for a temporary injunction. The day before that hearing, Bloom filed a consolidated special appearance and motion to dismiss, in which it contended that the trial court lacked personal jurisdiction over it and that the parties' contract contained a forum-selection clause requiring this suit to be filed in another forum. The trial court then entered an agreed order postponing the injunction hearing. As recited in the order, Bloom also agreed to release its lien in exchange for payment of the amount stated in the lien, without waving its special appearance. It is undisputed that Glencove paid the lien and Bloom released it.

3

The trial court subsequently heard Bloom's special appearance and motion to dismiss and Glencove's application for a temporary injunction. During that hearing, the court ruled from the bench that it had specific jurisdiction over Bloom with respect to Glencove's lien-related claims and that its lien-related claims were not within the scope of the forum-selection clause but that Glencove's other claims had to be brought in Colorado. The trial court also entered a temporary injunction, ordering Bloom not to take possession of the plane or file any further liens on it. Bloom filed a petition for a writ of mandamus, contending that the forum-selection clause required dismissal of all Glencove's claims. The following day, the trial court entered a written order denying Bloom's special appearance and motion to dismiss in their entirety. Its order did not include fact findings, state the reasons for its ruling, or explain why the court's written ruling differed from the one it made at the hearing. Bloom then filed an interlocutory appeal from the court's denial of its special appearance.

**Forum-Selection Clause**

**A. Standard of review and applicable law**

To obtain a writ of mandamus, the relator must show that the trial court's order is void or a clear abuse of discretion and that there is not an adequate appellate remedy. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016). A trial court abuses its discretion if its ruling is arbitrary and unreasonable or made without

4

regard for guiding legal principles or supporting evidence. *Id.* A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *Id.*

Contractual forum-selection clauses generally are enforceable. *Id.* Indeed, they are presumptively valid. *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (per curiam); *Vak v. Net Matrix Solutions*, 442 S.W.3d 553, 558–59 (Tex. App.—Houston [1st Dist.] 2014, no pet.). A trial court therefore abuses its discretion if it fails to properly interpret or enforce a forum-selection clause. *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010) (per curiam).

When addressing a forum-selection clause, the trial court first must make a common-sense examination of the claims asserted in the suit and determine whether they are within the scope of the clause. *In re Int'l Profit Assocs.*, 274 S.W.3d 672, 677 (Tex. 2009) (per curiam); *Loya v. Loya*, 507 S.W.3d 871, 876 (Tex. App.—Houston [1st Dist.] 2016, no pet.). In interpreting the clause, the court applies ordinary principles of contract interpretation, according its terms their usual meaning without reference to evidence outside of the contract if it is unambiguous. *Loya*, 507 S.W.3d 876. A party may not evade the scope of the clause by artfully pleading its claims. *In re Int'l Profit Assocs.*, 274 S.W.3d at 677. In general, as long as the rights and duties of the parties arise from the contract, the claims are within the scope of its forum-selection clause no matter how they are framed. *In re Fisher*, 433 S.W.3d

5

523, 529–31 (Tex. 2014); *In re Lisa Laser*, 310 S.W.3d at 884–85; *In re Int'l Profit Assocs.*, 274 S.W.3d at 677–78.

If the claims are within the forum-selection clause's scope, the trial court must then determine whether to enforce it. *Loya*, 507 S.W.3d at 876. It must enforce the clause unless the party opposing its enforcement clearly shows that:

- enforcement of the clause would be unreasonable or unjust;

- the clause is invalid by reason of fraud or overreaching;

- enforcement would contravene a strong public policy of this state; or

- the contractually agreed forum would be seriously inconvenient for trial.

*In re Nationwide Ins. Co. of Am.*, 494 S.W.3d at 712; *In re Laibe Corp.*, 307 S.W.3d at 316. The party opposing enforcement of the forum-selection clause has a heavy burden of proof in this regard. *In re ADM Inv. Servs.*, 304 S.W.3d 371, 375 (Tex. 2010). If it does not carry it, the trial court must enforce the clause by dismissing the suit. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d at 712; *In re Automated Collection Techs.*, 156 S.W.3d 557, 559–60 (Tex. 2004) (per curiam).

Appeal is never an adequate remedy for the erroneous refusal to enforce a forum-selection clause. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d at 712; *In re AIU Ins. Co.*, 148 S.W.3d 109, 115–20 (Tex. 2004). Requiring a party to wait until appeal to raise this issue would deprive it of the very right for which it contracted— the right to trial in the agreed upon forum. *In re Lisa Laser*, 310 S.W.3d at 883.

**B.     The forum-selection clause is valid.**

Glencove concedes the validity of the parties' contract and does not dispute that it contains a forum-selection clause. The forum-selection clause provides: "Any litigation involving this Agreement shall be adjudicated in a court with jurisdiction located in Pitkin County, Colorado and the parties irrevocably consent to the personal jurisdiction and venue of such court." Nor does Glencove contend that the forum-selection clause is unenforceable because it is unreasonable or unjust, fraudulent or overreaching, at odds with public policy, or seriously inconvenient.

**C.     Glencove's claims "involve" the parties' contract.**

Glencove contends that the forum-selection clause is narrow in scope and does not encompass its claims for declaratory and injunctive relief and damages relating to Bloom's allegedly invalid lien. Based on the clause's specification that it applies to "litigation involving this Agreement," Glencove argues that a claim must arise under the contract in order to fall within the scope of the forum-selection clause. Glencove further argues that, rather than arising under the contract, its lien-related claims are based on Bloom's post-contract filing of an invalid lien and that its claim therefore arises under the statute governing liens relating to aircraft maintenance contracts. *See* TEX. PROP. CODE §§ 70.301–.307.

We disagree that the forum-selection clause is as narrow as Glencove suggests. The clause does not include the phrase "arising under," let alone limit its

7

scope solely to claims that arise under the contract. Instead, the clause includes within its ambit all litigation "involving" the contract. Because the contract does not define this term or otherwise clarify its meaning, we accord the word "involving" its ordinary meaning. *See Loya*, 507 S.W.3d at 876. "Involve" is used in many contexts and its meaning varies accordingly. *See* WEBSTER'S NEW WORLD COLLEGE DICTIONARY 766 (5th ed. 2014) (providing eight distinct definitions). In relevant part, its definitions include "to relate to or affect." *Id.*; *see also* NEW SHORTER OXFORD ENGLISH DICTIONARY 1427 (6th ed. 2007) (definitions include to "affect, concern directly"); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 660 (11th ed. 2003) (definitions include "to relate closely"). Thus, the ordinary meaning of "involving" is broad enough to encompass claims beyond those that arise under the contract in the strict sense of being based on the contract's terms, including claims that merely affect or relate to the contract. For example, the Supreme Court of Texas has held that an arbitration clause that governed all disputes "involving" a contract applied to a fraudulent inducement claim even though such a claim is premised on pre-contractual tortious conduct rather than the contract's terms. *See In re J.S. Edwards World Solutions Co.*, 87 S.W.3d 546, 550–51 (Tex. 2002) (per curiam).

With this broader scope in mind, we conclude that Glencove's lien-related claims are claims "involving" the parties' contract. Bloom filed the lien on the plane in an attempt to enforce its alleged right to payment under the contract. Glencove

nonetheless contends that its claims for declaratory and injunctive relief and damages relating to Bloom's lien are not related to the contract. According to Glencove, if Bloom had desired to enforce its contract rights, it could have filed a breach-of-contract action seeking any money it was owed. Instead, Glencove argues, Bloom did something that neither the contract nor Texas law allowed—it filed an invalid lien on the plane. In essence, Glencove contends that Bloom's filing of the lien was extra-contractual and tortious and that Glencove's corresponding lien-related claims are therefore unrelated to the contract. However, a claim is not necessarily outside the scope of a contractual clause that applies to claims "involving" the contract simply because it is a tort. *See id.*

Moreover, Bloom's lien and the parties' contract are not as separate and distinct as Glencove asserts. As the face of the lien indicates, the parties' maintenance contract is the purported basis for the statutory lien. *See* TEX. PROP. CODE § 70.301 (creating liens for amounts due under aircraft maintenance contracts). Without the contract, there would be no statutory lien. *See id.* Glencove disputes that the lien is valid under the terms of the contract, contending that Bloom's filing of the lien was "not contemplated, provided for or required under the management agreement." But this contention underscores that an evaluation of Bloom's lien-related claims requires an evaluation of the parties' rights under the contract. The lien and Glencove's claims regarding its invalidity therefore affect or

9

relate to its contract with Bloom. It is possible that Glencove is correct regarding the lien's invalidity, but that goes to the merits of its lien-related claims, not the scope of the forum-selection clause. The point of a forum-selection clause is to require the merits to be tried in the contractually chosen forum. *See Deep Water Slender Wells v. Shell Int'l Expl. & Prod.*, 234 S.W.3d 679, 695 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Glencove additionally contends that it had no choice but to file suit in Texas after Bloom filed its lien under this state's aircraft maintenance lien statute because, once its secured lender learned of the lien, the lender threatened to foreclose on the loan used to buy the airplane. It is true that the lender informed Glencove that the lien rendered Glencove in default of the loan and directed Glencove either to discharge the lien through payment or contest it. But these circumstances do not render inoperative Glencove's agreement to litigate all disputes involving the contract in Colorado. Nor does Glencove explain why it could not obtain appropriate declaratory or injunctive relief regarding Bloom's lien in that forum. *Cf. Westwind Acquisition Co. v. Universal Weather & Aviation*, 668 F. Supp. 2d 749, 750–54 (E.D. Va. 2009) (declaring invalid liens filed under Texas's aircraft maintenance statute).

Finally, we conclude that Glencove's remaining claims for breach of contract, fraud, and negligent misrepresentation are likewise claims "involving" the parties' contract and therefore are subject to its forum-selection clause. Glencove's contract

10

claim is expressly premised on its rights under the contract. Its claims for fraud and negligent misrepresentation are both based on representations Bloom allegedly made in the course of its contractual performance. Each of these claims therefore is a claim involving the contract. *See In re J.S. Edwards World Solutions Co.*, 87 S.W.3d at 550–51. Glencove does not contend otherwise. Indeed, in the trial court it conceded that some or all of its non-lien-related claims were subject to the forum-selection clause. Instead, Glencove argues that Bloom's petition for writ of mandamus only pertains to Glencove's claims for declaratory and injunctive relief and damages relating to the lien. Bloom, however, repeatedly asserted in its petition that the forum-selection clause required the trial court to dismiss all of Glencove's claims. Thus, we conclude that Bloom sought mandamus relief with respect to all of Glencove's claims, not just those relating to Bloom's lien.

## Personal Jurisdiction

As this suit must be dismissed due to the forum-selection clause, we need not decide whether the trial court had personal jurisdiction over Bloom. We therefore dismiss as moot Bloom's appeal from the trial court's denial of its special appearance.

11

## Conclusion

We conclude that the trial court abused its discretion by refusing to enforce the forum-selection clause, and we conditionally grant the writ, direct the trial court to vacate its orders denying Bloom's motion to dismiss and granting Glencove's application for a temporary injunction, and direct the trial court to grant Bloom's motion to dismiss. We trust that the trial court will comply with these directives, and the writ will issue only if the trial court does not do so.

We dismiss as moot Bloom's appeal from the denial of its special appearance and its motion to consolidate that appeal with the mandamus proceeding.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.