**Opinion filed February 20, 2026**



# In The

# Eleventh Court of Appeals

_____

## No. 11-25-00089-CV

_____

## IN RE MATTR US INC.; SHAWCOR, INC.; FLEXPIPE SYSTEMS (US) LLC; AND SHAWCOR COMPOSITE PRODUCTION SYSTEMS

**Original Mandamus Proceeding**

# O P I N I O N

Relators, In re Mattr US Inc., Shawcor, Inc., Flexpipe Systems (US) LLC, and Shawcor Composite Production Systems (Flexpipe)[1] filed this original petition for writ of mandamus asserting that Respondent, the Honorable R. Shane Seaton, the presiding judge of the 118th District Court of Howard County, clearly abused his discretion by denying a motion to dismiss a suit filed by Real Party in Interest SM Energy Company (SM Energy) based on a forum-selection clause and by denying a

_____

[1] Relators state that only Flexpipe Systems (US) LLC is a proper party because Shawcor Composite Production Systems is not an entity but an assumed name of Flexpipe, and because Shawcor Inc. and Mattr US Inc. "were not the entities involved in the pipe sales." Collectively, we will refer to Relators as "Flexpipe."

motion to compel discovery regarding the forum dispute. Flexpipe requests that we order Judge Seaton to grant its motion to dismiss, or, alternatively, to grant Flexpipe's motion to compel discovery. Because we conclude that the trial court did not clearly abuse its discretion in its rulings, we deny Flexpipe's petition for writ of mandamus.

I. *Factual and Procedural Background*

SM Energy, an oil and gas exploration and production company, filed the underlying suit against Flexpipe alleging that Flexpipe supplied defective composite pipe for SM Energy's gas lift operations in Howard County "and other areas of Texas." Flexpipe, a Canadian company, answered and filed a motion to dismiss for forum non conveniens, which it later amended, arguing that the parties agreed to a forum-selection clause that required disputes between the parties be heard in Alberta, Canada.

In the amended motion, Flexpipe stated that SM Energy placed approximately 156 orders with Flexpipe over ten years, and, for each order, Flexpipe would send an order acknowledgment (OA) to SM Energy detailing price, quantity, and shipping method, as well as general terms and conditions. Among the price details provided was the following return/credit information:

> Within 90 days of purchase, one full reel, one partial reel of greater than 600 ft, and four fittings may be returned for credit less a $295 per reel inspection fee. Additional returns are subject to a 20% restocking fee. Material must be in re-saleable condition. Repair costs for damaged reels shall be deducted from applicable credits. Any returns after 90 days of purchase must be approved by a [Flexpipe] representative.

This return/credit provision appeared before the signature instructions, which read: "By signing below, I acknowledge the above order information is accurate; I agree the sales order is subject to [Flexpipe's] terms and conditions; and I request

2

[Flexpipe] to invoice & store the above order should the 'Ship Date' be exceeded." SM Energy did not sign any of the OAs.

Following the blank signature block, the next page of the OA, titled "General Terms and Conditions" provided in part: "Acceptance by Buyer of any sale proposal furnished by [Flexpipe] or of a shipment from [Flexpipe] shall be deemed a full acceptance by Buyer of all of the Terms and Conditions set forth herein," and "Different or additional terms proposed by Buyer are deemed material alterations and are objected to and rejected unless agreed to by [Flexpipe] in writing." Flexpipe argued the following term required dismissal of SM Energy's lawsuit: "[Flexpipe] and Buyer hereby irrevocably attorn to the exclusive jurisdiction of the courts of the Province of Alberta[, Canada]."[2]

According to Flexpipe, and as illustrated by OAs and correspondence attached to its motion to dismiss, "[w]henever there was a request for a change, a revised and updated [OA] would be sent to [SM Energy] for its review and approval." Flexpipe stated that "[m]any times, there would be two or three revised [OAs] issued in connection with a single order as [SM Energy] reviewed each offer and made various requests for changes thereto." Flexpipe argued that the OAs constituted an offer, which SM Energy accepted by completing the purchase process without objecting to specific terms.

Flexpipe also argued that later blanket purchase orders (BPO) issued by SM Energy did not control the parties' dispute because they were issued after the majority of the pertinent orders were placed and the orders were filled. Further, one of the alleged pipe failures occurred prior to the issuance of the first BPO. Flexpipe,

---

[2] Printed on the back of the OA in very small, compact and uniform font are "General Terms and Conditions" with nineteen single-spaced provisions; the language cited by Flexpipe is found in the second sentence of provision sixteen. Although not determinative here, facially, there are no conspicuous headings, subtitles nor anything that is set out, bolded, underlined, italicized, or distinguishing about the exclusive jurisdiction provision.

citing the testimony of SM Energy's corporate representative, stated that the purpose of the BPO was to solidify pricing and not to change the terms and conditions of the OAs. Flexpipe further asserted that SM Energy is equitably estopped from challenging the OAs' terms because it benefitted from the returns/credits provision of the OAs.

As to the forum-selection clause, Flexpipe maintains that it is "clear and mandatory;" thus, requiring the parties to submit their dispute "to the exclusive jurisdiction of the courts of the Province of Alberta." Flexpipe explained that dismissal of SM Energy's suit is required because Alberta is an available and appropriate forum that is supported by public interest factors weighing against SM Energy's choice of forum.

SM Energy filed a response to the motion to dismiss, arguing that the "terms and conditions – including the forum selection clause – were never agreed to by [SM Energy] and are ineffective." SM Energy explained that its "failure to sign the [OAs] renders the terms and conditions . . . unenforceable." SM Energy stated that the parties' course of dealing and its own failure to object to any terms did not render the forum-selection clause enforceable. Regarding equitable estoppel, SM Energy maintained that there is no evidence that it benefitted from the returns/credits provision of the OAs. SM Energy further asserted that since the forum selection clause is ineffective, a traditional forum non conveniens analysis applied, thereby compelling retention of the case in Texas.

SM Energy subsequently noticed the deposition of Flexpipe's corporate representative on topics related to the motion to dismiss, and Flexpipe responded by filing a motion to quash as well as a motion for protection. The trial court held a hearing on the motion and ruled that "it is appropriate to at least allow some discovery on the forum non conveniens issue" and allowed the parties forty-five days

4

to conduct discovery. Flexpipe subsequently filed a motion to compel discovery "on forum non conveniens issues." Flexpipe maintained that SM Energy failed to respond to discovery requests in accordance with the trial court's prior ruling. In particular, Flexpipe asserted that SM Energy failed to produce documents pertaining to: the contractual relationship; SM Energy's knowledge that Flexpipe was located in Canada; the controlling terms and conditions; order documentation; and communications regarding these issues. Flexpipe principally sought the production of documents concerning authorizations for expenditures (AFE), invoices, order approvals, and cost estimates. Flexpipe maintained that these documents might show SM Energy's review and approval of the OAs. Flexpipe further argued that SM Energy failed to timely object to its discovery requests.

SM Energy filed a response, explaining that the AFEs "have no relation to the issues raised by the motion to dismiss" because they are "internal document[s] prepared at the initial planning stage of a drilling project in order to obtain funding for [a] well." SM Energy stated that it had confirmed that there were no AFEs specifically issued for Flexpipe and the AFEs contain no mention of Flexpipe or the OAs. SM Energy noted that it served timely objections to Flexpipe's discovery requests.

Following a hearing, the trial court signed orders denying both Flexpipe's amended motion to dismiss for forum non conveniens and its motion to compel discovery. Flexpipe then filed this petition for writ of mandamus as well as a motion to stay the trial court proceedings during our review. We granted the motion and ordered that all actions and proceedings in the trial court below be temporarily stayed, pending further order of this court or final disposition of this mandamus proceeding. TEX. R. APP. P. 52.10(b). SM Energy subsequently filed a response to the petition for writ of mandamus, and Flexpipe filed a reply.

5

## II. *Mandamus*

Mandamus is an "extraordinary" remedy that is "available only in limited circumstances." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A writ of mandamus will issue only if the trial court clearly abused its discretion, and the relator has no adequate remedy on appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019) (orig. proceeding); *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). In addition, because a trial court has no discretion in determining what the law is or in applying it to the facts, a trial court abuses its discretion if it fails to correctly analyze or apply the law. *See Prudential*, 148 S.W.3d at 135; *see also In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding).

Courts interpret unambiguous forum-selection clauses according to their plain language under ordinary principles of contract interpretation. *In re Bloom Bus. Jets, LLC*, 522 S.W.3d 764, 768 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding). A trial court clearly abuses its discretion when it fails to properly interpret or apply a forum-selection clause. *In re Invincible Boat Co. LLC*, No. 14-24-00565-CV, 2025 WL 478190, at *3 (Tex. App.—Houston [14th Dist.] Feb. 13, 2025, orig. proceeding). "There is no adequate remedy by appeal when a trial court refuses to enforce a forum-selection clause, and such clauses can be enforced via mandamus." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 231 (Tex. 2008) (orig. proceeding) (per curiam).

### III. *Forum Selection Clause*

Flexpipe argues that "the trial court clearly abused its discretion by failing to enforce [the OAs'] forum-selection clause designating 'exclusive jurisdiction' in Alberta, Canada." Flexpipe further maintains "the trial court clearly abused its discretion (a) if it used a common-law *forum non conveniens* analysis to reject enforcement of the parties' forum-selection clause and (b) when SM Energy offered no evidence . . . to avoid the forum-selection clause."

SM Energy responds that the OAs expressly conditioned the acceptance of the forum selection clause on its signature. Therefore, according to SM Energy, Flexpipe did not meet its burden to establish the existence of an agreement to an exclusive forum.

### A. *Applicable Law*

Forum-selection clauses allow contracting parties to "preselect the jurisdiction for dispute resolution." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 436 (Tex. 2017). Contractual forum-selection clauses are generally enforceable and presumptively valid in Texas. *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding) (per curiam); *HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*, 565 S.W.3d 799, 810 (Tex. App.—Houston [14th Dist.] 2018, no pet.). However, "[a] party seeking to enforce a forum-selection clause bears the initial burden of establishing the existence of a valid agreement to an exclusive forum and that the agreement applies to the claims involved." *HMT Tank*, 565 S.W.3d at 805. Additionally, "[w]hen a party seeks to enforce a forum-selection clause against a non-signatory to the contract containing the forum-selection clause, that party bears the burden to prove the theory upon which it relies to bind the nonsignatory to the contract." *CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 895 (Tex. App.—Dallas 2007, pet. denied).

If those burdens are met, a trial court abuses its discretion in refusing to enforce a forum-selection clause unless there is clear evidence that "(1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial." *Lyon*, 257 S.W.3d at 231–32 (citing *In re AIU Ins. Co.*, 148 S.W.3d 109, 112 (Tex. 2004) (orig. proceeding)). Subjecting a party to trial in a forum other than the *contractually* chosen one amounts to "'clear harassment' . . . injecting inefficiency by enabling forum-shopping, wasting judicial resources, delaying adjudication on the merits, and skewing settlement dynamics." *In re AutoNation Inc.*, 228 S.W.3d 663, 667–68 (Tex. 2007) (orig. proceeding).

B. *Analysis*

As stated above, preceding the signature line and the terms and conditions in each OA is the following language: "By signing below, I acknowledge the above order information is accurate; I agree the sales order is subject to [the] terms and conditions; and I request [Flexpipe] to invoice & store the above order should the 'Ship Date' be exceeded." SM Energy did not sign any of the OAs. The terms and conditions provided, "Different or additional terms proposed by Buyer are deemed material alterations and are objected to and rejected unless agreed to by [Flexpipe] in writing." We agree with SM Energy that the OA's signature instructions contemplate that a signature is required for acceptance of the terms and conditions.

"Contracts require mutual assent to be enforceable." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). "Texas law recognizes that a contract need not be signed to be 'executed' unless the parties explicitly require signatures as a condition of mutual assent." *Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010). "[A] party's failure to sign an agreement

8

will render it unenforceable when the terms of the contract make it clear that the party's signature is required to make it binding." *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 715–16 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

Flexpipe bore the initial burden to establish the existence of a valid agreement to an exclusive forum. *See HMT Tank*, 565 S.W.3d at 805. Acceptance by signature was expressly required by the OAs' following language: "*By signing below*, I acknowledge the above order information is accurate, *I agree* the sales order is subject to [the] terms and conditions." (Emphasis added). *See Lujan v. Alorica*, 445 S.W.3d 443, 449–50 (Tex. App.—El Paso 2014, no pet.) (finding parties did not agree to a forum selection clause where prospective employee failed to sign employment agreement containing the clause as well as language requiring a signature to accept terms of employment, but still proceeded with the employment relationship); *see also Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (concluding that the express language of an arbitration agreement required a signature for it to be binding where it contained: "(1) a statement that '[b]y signing this agreement the parties are giving up any right they may have to sue each other;' (2) a clause prohibiting modifications unless they are 'in writing and signed by all parties;' and (3) a signature block"); *Aggreko, LLC v. Bronxcare Health Sys.*, No. 01-22-00052-CV, 2024 WL 234409, at *5–6 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (mem. op.) (finding parties did not agree to a forum selection clause where lessee of equipment did not sign order form containing the clause but still accepted delivery); *Hi Tech Luxury Imports, LLC v. Morgan*, No. 03-19-00021-CV, 2019 WL 1908171, at *2 (Tex. App.—Austin Apr. 30, 2019, no pet.) (mem. op.) ("Hi Tech did not sign the arbitration agreement, and the [agreement's language 'MY SIGNATURE BELOW'] indicates that the signatures of both Hi Tech and Townsend were required for the agreement to be enforceable."). Yet, Flexpipe

presented no evidence that it obtained a signed acceptance of the OAs' terms and conditions by an authorized agent of SM Energy. This is true despite SM Energy having placed approximately 156 orders with Flexpipe over ten years, each order being accompanied by an OA.

Flexpipe responds that SM Energy accepted the terms and conditions "each time it confirmed [an OA] or took delivery of the pipe." In support, it relies on the following language in the terms and conditions: "Acceptance by Buyer of any sale proposal furnished by [Flexpipe] or of a shipment from [Flexpipe] shall be deemed a full acceptance by Buyer of all of the Terms and Conditions set forth herein." But as stated above, these terms and conditions were never incorporated into any *signed* agreement between the parties. *See Aggreko*, 2024 WL 234409, at *8 (rejecting the same argument based on a similarly worded agreement). Absent evidence that SM Energy signed the OAs and accepted the terms and conditions, Flexpipe did not meet its initial burden to establish the existence of a valid agreement to an exclusive forum. *See HMT Tank*, 565 S.W.3d at 805.

Alternatively, Flexpipe argues that SM Energy is equitably estopped from denying the existence of an agreement to the forum because SM Energy benefitted from the OAs' returns/credits provision and SM Energy's warranty claims cannot be determined without reference to the OAs. While recognizing that equitable estoppel is potentially applicable to the enforcement of forum-selection clauses, we conclude that, without an agreement having been established, it does not apply here. *See In re Longoria*, 470 S.W.3d 616, 625 n.2 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding) ("Direct benefits estoppel applies when a signatory's claim against a nonsignatory references or presumes the existence of the written agreement containing the [forum selection] clause."); *In re Cornerstone Healthcare Holding Group, Inc.*, 348 S.W.3d 538, 544–45 (Tex. App.—Dallas 2011, orig. proceeding)

10

("[A] nonsignatory plaintiff who seeks the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens.").

Unlike the forum-selection clause, the returns/credits provision is not contained in the general terms and conditions for which a signature was required for acceptance. Thus, any application of the returns/credits provision has no relation to whether SM Energy benefitted from the terms and conditions. *See Cornerstone*, 348 S.W.3d at 544–45. And, assuming arguendo that the provision represents a term or condition, Flexpipe presented no evidence that SM Energy invoked or relied on the provision when SM Energy returned products and received a credit. *See HMT Tank*, 565 S.W.3d at 805.

Further, contrary to Flexpipe's assertions, none of SM Energy's claims rely on the OAs' terms and conditions, such that SM Energy should be estopped from avoiding the forum-selection clause. SM Energy brought causes of actions for breach of the BPOs, the implied warranty of merchantability, and the implied warranty of fitness for a particular purpose, none of which invoke provisions of the OAs. *See Longoria*, 470 S.W.3d at 625. Finally, trial courts are afforded some discretion in applying estoppel based on the facts of each case because of the equitable nature of the doctrine. *Deaton v. Law Offices of Steven M. Johnson, P.C.*, 697 S.W.3d 676, 697 (Tex. App.—Eastland 2024, no pet.) (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 135 (Tex. 2005) (orig. proceeding)). On this record, we cannot conclude that the trial court clearly abused its discretion in rejecting Flexpipe's argument of equitable estoppel. *See id.*; *see also Carlile Bancshares, Inc. v. Armstrong*, No. 02-14-00014-CV, 2014 WL 3891658, at *9 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.) (recognizing the trial court's discretion in determining whether equitable estoppel required enforcement of a forum-selection clause).

For the foregoing reasons, we hold that Flexpipe has not demonstrated that the trial court clearly abused its discretion in denying its amended motion to dismiss on the basis that Flexpipe did not demonstrate the existence of a valid agreement to an exclusive forum. *See A.L.M.-F.*, 593 S.W.3d at 282. Because the trial court did not clearly abuse its discretion in ruling on this basis, we need not address Flexpipe's remaining arguments on this issue. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."), 52.8(d) (Rule 47 applies to orders and opinions in original proceedings.).

## IV. *Discovery*

Flexpipe argues in the alternative that "mandamus is appropriate to correct the trial court's erroneous discovery denial."

### A. *Applicable Law*

The Texas Rules of Civil Procedure define the scope of discovery as follows:

> In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party. It is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Tex. R. Civ. P. 192.3(a). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Tex. R. Evid. 401. We evaluate the relevancy of discovery on a case-by-case basis by considering the pleadings and the instrumentality of the alleged injury. *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 146 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding).

The scope of discovery is generally within the trial court's discretion. *In re UPS Ground Freight, Inc.*, 646 S.W.3d 828, 831 (Tex. 2022) (orig. proceeding) (per curiam); *In re Cent. Or. Truck Co.*, 644 S.W.3d 668, 671 (Tex. 2022) (orig. proceeding) (per curiam). "[D]iscovery requests and orders are overbroad if they are not properly tailored with regard to time, place, or subject matter, or otherwise require production of information that is not reasonably calculated to lead to the discovery of admissible evidence." *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 252 (Tex. 2021) (orig. proceeding) (internal quotation marks and citations omitted). Requests for discovery "must show a reasonable expectation of obtaining information that will aid the dispute's resolution." *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam).

B. *Analysis*

Flexpipe argues that SM Energy failed to produce documents in response to a notice of corporate representative deposition that included a subpoena *duces tecum*. It explains that certain responsive documents existed that were not produced as indicated by the testimony of SM Energy's corporate representative, Thomas Morrow:

> SM Energy has distinct processes for approving (a) Flexpipe invoices and (b) Authorizations for Expenditure ("AFE"). An AFE is a request for funds and thus includes cost estimates. As [Morrow] admitted, if SM Energy had Flexpipe's [OAs] when an AFE was prepared or approved, then information from the [OA] would be reflected in the AFEs. In turn, [Morrow] testified that the "AFE documents that pertain to the purchases that were made from Flexpipe" reside in "AFE Navigator," a database. That database (and the other AFE-related requests) could show when AFEs were approved, who approved them, and whether Flexpipe's [OAs] were considered. So too, of course, would internal emails or other correspondence related to the orders.

After the deposition, Flexpipe e-mailed additional document requests. SM Energy objected to these additional requests "on the ground that the request went beyond

13

the issues on which Judge Seaton authorized discovery." Thereafter, Flexpipe filed a motion to compel the production of: "Documents and communications relating to the AFEs, including as stored in AFE Navigator; Documents and communications relating to SM Energy's review and approval of Flexpipe invoices; and Internal emails related to the 150-plus orders." Flexpipe argues that the requested information is discoverable because it is directly relevant to SM Energy's review and acceptance of the OAs. SM Energy responds that the request for AFEs and related documents have "nothing to do with the issues raised by" the motion to dismiss.

At the hearing on the motion to compel, SM Energy explained that an AFE "is an internal document prepared at the initial planning stage of a drilling project in order to obtain funding for well" and that "[a]n AFE includes costs involved in the project, such as leasing and land information, geologic and engineering data, reserve estimates and economic analysis, well justifications, equipment costs, and similar information." SM Energy asserted that the AFEs are used internally to get approval to drill a well. In its response to the motion to compel and at the hearing, SM Energy offered evidence that it had no AFEs that referenced the OAs. SM Energy explained that its AFEs do not refer to OAs or Flexpipe and tendered two example AFEs to the trial court. SM Energy stated that the OAs did not exist at the time SM Energy created the AFEs for approval to drill wells. Rather, the OAs "come way down the road when they're ready to send the pipe or have the pipe picked up."

Our conclusion that SM Energy was required to sign the OAs for the forum-selection clause to be enforceable impacts our disposition of this issue. The trial court permitted "some discovery on the forum non conveniens issue." Based on the record, the trial court was entitled to conclude that there was no "reasonable expectation" that further discovery of the AFEs and internal planning documents

14

sought by Flexpipe would provide admissible evidence that would "aid in the dispute's resolution." *See CSX Corp.*, 124 S.W.3d at 152; *see also* TEX. R. EVID. 401; *K & L Auto Crushers, LLC*, 627 S.W.3d at 252. Accordingly, we conclude that Flexpipe has failed to demonstrate that the trial court clearly abused its discretion in denying its motion to compel discovery. *See UPS Ground Freight, Inc.*, 646 S.W.3d at 831.

## V. *This Court's Ruling*

In light of the foregoing, we deny Flexpipe's petition for writ of mandamus. The temporary stay previously issued in this proceeding is dissolved. TEX. R. APP. P. 52.10(b).

W. BRUCE WILLIAMS
JUSTICE

February 20, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.