

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-17-00176-CV

_____

ANTHONY A. RIEDER; ED RAPEE III; AND CADBURY SOLUTIONS, LLC,
Appellants

V.

ALAN MEEKER AND CQUENTIA SERIES, LLC, Appellees
AND
KENNY WOODS, Appellant

V.

ANTHONY A. RIEDER; ED RAPEE III; AND CADBURY SOLUTIONS, LLC,
Appellees

---

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-288556-16

---

Before Walker, Meier, and Pittman, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I. Introduction

This is an interlocutory appeal from an order on a special appearance. Kenny Woods filed suit against Anthony A. Rieder; Ed Rapee III; and Cadbury Solutions, LLC. Rieder, Rapee, and Cadbury jointly filed a special appearance. Subsequently, Alan Meeker and CQuentia Series, LLC (collectively, Intervenors) both intervened in Woods's suit and asserted their own claims against Rieder, Rapee, and Cadbury.

The trial court granted Rieder's, Rapee's, and Cadbury's special appearance as to the claims asserted against them by Woods but denied their special appearance as to the claims asserted against them by Intervenors. Rieder, Rapee, and Cadbury perfected this appeal challenging the trial court's denial of their special appearance as to Intervenors' claims. Woods cross-appealed, challenging the trial court's granting of Rieder's, Rapee's, and Cadbury's special appearance as to the claims he asserted against them.

We address two primary questions. First, whether Cross-Appellant Woods's claims, Intervenor Meeker's claims, and Intervenor CQuentia's claims pleaded against Rieder, Rapee, and Cadbury fall within the scope of the forum-selection clause contained in the CQuentia/Cadbury Series Agreement at issue here,[1] and second, whether Cross-Appellant Woods, Intervenor Meeker, and Intervenor CQuentia can

---

[1]This question is presented, respectively, by Cross-Appellant Woods's first issue and by Appellants Rieder, Rapee, and Cadbury's first and second issues.

enforce the CQuentia/Cadbury Series Agreement's forum-selection clause against Rieder and Rapee individually and against Cadbury.[2] Because the answer to both of these questions is yes, we will reverse the portion of the trial court's special appearance order granting Rieder's, Rapee's, and Cadbury's special appearance as to Cross-Appellant Woods's claims, and we will affirm the portion of the trial court's special appearance order denying Rieder's, Rapee's, and Cadbury's special appearance as to Intervenors' claims.

## II. Factual and Procedural Background

### A. The Parties Meet and Begin Business Discussions

Kenny Woods, a Utah salesman, was introduced to Anthony A. Rieder, a physician, and to Ed Rapee, a commercial insurance broker, by a mutual business associate. The three men held several meetings in Rieder and Rapee's home state of Wisconsin and discussed various business proposals in the health care industry. Woods then introduced Rieder and Rapee to CQuentia Series, LLC, a Fort Worth company, in the hope of developing a joint business proposal in which CQuentia would contract with Woods, Rieder, and Rapee to distribute CQuentia's medical products and services.

---

[2]This question is presented by Appellants Rieder, Rapee, and Cadbury's first issue and by Cross-Appellant Woods's second issue. Because Rieder, Rapee, and Cadbury are both appellants and cross-appellees in this appeal and because Woods (in addition to Rieder, Rapee and Cadbury) is also an appellant—a cross-appellant—we refer to these parties in these capacities to reflect the capacity in which their particular arguments are made.

## B. Woods, Rieder, and Rapee Form Cadbury Solutions, LLC

After several months of negotiations, Woods, Rieder, and Rapee created Cadbury Solutions, LLC for the specific purpose of entering into an agreement with CQuentia to conduct business in the health care industry. Each of the three men served as a one-third owner and as a managing member and was designated to serve as a member of the board of Cadbury. The Cadbury Operating Agreement—which governs the relationship between Woods, Rieder, and Rapee as co-managers and members of Cadbury—states in Paragraph 8(d):

> Board Exculpation. No Board Member, officer, or agent appointed by the Board, individually or severally, will be liable, responsible, or accountable in damages or otherwise to the Company or to any Member for any acts performed or omitted by him or her related to the Company, *except: (i) for any breach of the Board Member's duty of loyalty to the Company or its Members; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) for breaches of this Agreement; or (iv) for any transaction from which the Board Member derived an improper personal benefit. Each of the persons referenced above in this section is an express third-party beneficiary of this section.* [Emphasis added.]

On February 1, 2016, Woods filed Cadbury's organizational papers with the Nevada Secretary of State. According to Woods, the effective date of the Cadbury Operating Agreement drafted to form Cadbury was February 1, 2016.[3]

---

[3]Although the parties dispute when the Cadbury Operating Agreement was signed and whether it ever became effective, the document states that it has an effective date of February 1, 2016.

4

## C. Cadbury and CQuentia Enter into a Series Agreement

The negotiations between Woods, Rieder, Rapee, and Alan Meeker—who is the CEO of CQuentia—culminated in the CQuentia/Cadbury Series Agreement, whereby Cadbury contracted with CQuentia to promote the sale and distribution of CQuentia's DNA testing services to hospitals and health care providers. The CQuentia/Cadbury Series Agreement contains a forum-selection clause, which states:

> 20. **GOVERNING LAW**. **THIS AGREEMENT SHALL BE GOVERNED BY, AND INTERPRETED AND ENFORCED IN ACCORDANCE WITH, THE SUBSTANTIVE LAWS OF THE STATE OF TEXAS, WITHOUT REFERENCE TO THE CONFLICTS OF LAW RULES OF THAT OR ANY OTHER JURISDICTION. ANY CLAIMS OR CONTROVERSIES UNDER OR RELATED TO THIS AGREEMENT SHALL BE EXCLUSIVELY DETERMINED IN THE STATE AND/OR FEDERAL COURTS LOCATED IN TARRANT COUNTY, TEXAS, TO WHOSE JURISDICTION EACH PARTY IRREVOCABLY CONSENTS.**

The CQuentia/Cadbury Series Agreement also was executed on February 1, 2016; Meeker signed on behalf of CQuentia, and Woods signed on behalf of Cadbury.

## D. Cadbury's Members Have a Falling Out

The relationship between CQuentia and Cadbury did not go as planned, and Woods, Rieder, and Rapee soon had a falling out. In September 2016, CQuentia sent a letter to Woods, Rieder, and Rapee stating that due to discord among the members of Cadbury, CQuentia had determined, in its sole discretion, that the CQuentia/Cadbury Series Agreement had terminated.

In response, Cadbury's attorney sent a letter to Meeker as CEO of CQuentia stating that none of the conditions had been met for termination of the CQuentia/Cadbury Series Agreement and that it remained "in full force and effect." CQuentia's general counsel responded to Cadbury's attorney on behalf of Meeker and argued that the CQuentia/Cadbury Series Agreement "was never born." Because Woods was working with Meeker and CQuentia apart from the CQuentia/Cadbury relationship, Cadbury's attorney also sent a letter to Woods threatening legal action against him if he failed to honor his fiduciary and contractual obligations to Cadbury under the Cadbury Operating Agreement.

### E. Woods Files Suit in Texas

Following this exchange of letters, Woods filed suit against Rieder, Rapee, and Cadbury in Tarrant County, Texas, seeking a declaratory judgment that Cadbury had never become operational, that Cadbury had not entered into the CQuentia/Cadbury Series Agreement because the Cadbury Board did not approve it, and that the Cadbury Operating Agreement had never gone into effect. Woods also filed claims for tortious interference with contract, fraud, and breach of contract against Rieder and Rapee individually.

### F. Cadbury Files Suit in Wisconsin

Cadbury reciprocated by filing suit against Woods and Meeker in the Circuit Court of Waukesha County, Wisconsin, seeking declaratory relief that Cadbury is a viable company; seeking damages from Woods for breach of contract, breach of the

6

covenant of good faith and fair dealing, breach of fiduciary duty, and usurpation of corporate opportunity; and seeking damages from Meeker for tortious interference with contract, injury to business, and tortious interference with prospective contract.

## G. The Battle over Jurisdiction Begins

Back in the Tarrant County suit, Rieder, Rapee, and Cadbury filed "Defendants' Consolidated Special Appearance, Motion to Dismiss for Want of Personal Jurisdiction, and, Alternatively, Motion to Dismiss based on *Forum non Conveniens*, and Brief in Support Thereof," arguing that jurisdiction for the disputes should be in the Wisconsin court. Woods then amended his petition to include a reference to the forum-selection clause in the CQuentia/Cadbury Series Agreement and asserted its applicability to his claims against Rieder, Rapee, and Cadbury.

Cadbury subsequently agreed in the trial court—and also agrees on appeal—that the CQuentia/Cadbury Series Agreement's forum-selection clause is applicable to the claims asserted against Cadbury by Intervenor CQuentia in CQuentia's intervention petition.[4]

---

[4]In the trial court, Rieder, Rapee, and Cadbury's counsel stated on the record, "I agree that the Court has personal jurisdiction over Cadbury only." In this court, Rieder, Rapee, and Cadbury's appellants' brief states, "Cadbury does not dispute that any potential claims between it and CQuentia must be venued in Texas."

## H. Meeker and CQuentia Intervene in the Texas Suit

Meeker filed a plea in intervention in Woods's Texas suit against Rieder, Rapee, and Cadbury. Meeker sought a declaratory judgment against Rieder, Rapee, and Cadbury that (1) Meeker and any entity he operates has the right to use Woods's services without incurring liability under the Cadbury Operating Agreement and (2) as CEO of CQuentia, he had the right to end the CQuentia/Cadbury Series Agreement. CQuentia also filed a plea in intervention in Texas, alleging fraud, fraudulent inducement, and negligent misrepresentation claims against Rieder and Rapee individually.

## I. The Texas Court Rules on Jurisdiction

The parties in the Texas suit filed a series of motions and discovery requests, culminating in a hearing before the Texas court on Rieder, Rapee, and Cadbury's consolidated amended special appearance, motion to dismiss for want of personal jurisdiction, or in the alternative, motion to dismiss based on forum non conveniens, as well as on their consolidated supplemental special appearance as to Intervenors' claims. After a lengthy hearing, the trial court granted Rieder's, Rapee's, and Cadbury's special appearance as to Woods's claims; dismissed with prejudice Woods's claims against them; and denied Rieder's, Rapee's, and Cadbury's special appearance as to Intervenors' claims against them.[5]

---

[5]Upon being advised of these interlocutory appeals, the Wisconsin court stayed the proceedings in the related suit in its court pending the outcome of these appeals.

8

## III. The Standard of Review, the Law Concerning Forum-Selection Clauses, and an Overview of the Parties' Positions

### A. Standard of Review

We review a trial court's decision on whether to enforce a forum-selection clause for an abuse of discretion. *Brown v. Mesa Distribs., Inc.*, 414 S.W.3d 279, 284 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "Under an abuse[-]of[-]discretion standard, we defer to the trial court's factual determinations if they are supported by the evidence, but we review the trial court's legal determinations de novo." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). To the extent our review involves contractual interpretation of a forum-selection clause, we employ a de novo standard of review. *Phoenix Network Techs. (Eur.) Ltd. v. Neon Sys.*, 177 S.W.3d 605, 610 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

### B. Overview of the Law on Enforcing Forum-Selection Clauses

Determining the enforceability of a forum-selection clause loosely involves a four-stage process. We first determine whether the contract in fact contains a forum-selection clause by using ordinary principles of contract interpretation. *See RSR Corp. v. Siegmund*, 309 S.W.3d 686, 700 (Tex. App.—Dallas 2010, no pet.). Next, if such a clause is found, we determine whether there is any reason to deem it unenforceable, recognizing that there is a presumption that forum-selection clauses are generally enforceable and should be given full effect. *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 436 (Tex. 2017); *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex.

9

2010) (orig. proceeding); *In re Int'l Profit Assocs.*, 274 S.W.3d 672, 675 (Tex. 2009) (orig. proceeding). A trial court should enforce a mandatory forum-selection clause unless clear evidence exists supporting unenforceability because "(1) the clause is invalid for reasons of fraud or overreaching, (2) enforcement would be unreasonable or unjust, (3) enforcement would contravene a strong public policy of the forum where suit was brought, or (4) the selected forum would be seriously inconvenient for trial." *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding).

If we determine that the forum-selection clause is enforceable, we next analyze the forum-selection clause's scope and determine whether the pleaded claims fall within that scope. *See Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 432. The parties' chosen language and the common principles of contract law are the fulcrum of our inquiry in determining the scope of a forum-selection clause because forum-selection clauses are creatures of contract, and we must give effect to the parties' intent as expressed in the four corners of the contract. *See id.* In determining the parties' intent as to the scope of the forum-selection clause, instruments pertaining to the same transaction may be read together even if the parties executed the instruments at different times and the instruments do not expressly refer to each other. *See Fort Worth ISD v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000).

To determine whether pleaded claims fall within the scope of a forum-selection clause, we engage in a common-sense examination of the substance of the claims made. *Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 432. We look to the factual allegations

10

of the pleadings to determine whether the existence or terms of a forum-selection-clause-containing contract are operative facts in the pleaded disputes and whether the pleaded claims are fairly included within the specific language governing the scope of the clause—here the specific language is "any and all claims or controversies under or related to this agreement." *See id.* at 432, 441–43 (stating that "whether a forum-selection clause applies depends on the factual allegations undergirding the party's claims rather than the legal causes of action asserted").

Finally, we determine whether the forum-selection clause is enforceable by and against the parties as they are positioned on the issue of its enforceability. *See, e.g., Ball Up, LLC v. Strategic Partners Corp.*, No. 02-17-00197-CV, 2018 WL 3673044, at *6 (Tex. App.—Fort Worth Aug. 2, 2018, no pet.) (mem. op.) (recognizing that legal theories exist authorizing enforcement of forum-selection clauses by and against nonsignatories).

### C.  Overview of the Parties' Positions

In his cross-appeal from the trial court's order granting Rieder's, Rapee's, and Cadbury's special appearance concerning his claims, Cross-Appellant Woods argues that (assuming Cadbury validly entered into the CQuentia/Cadbury Series Agreement despite the alleged lack of board approval of that contract under the Cadbury Operating Agreement) his claims fall within the scope of the forum-selection clause, that Cadbury is bound by the CQuentia/Cadbury Series Agreement's forum-selection clause as a party to it, and that Rieder and Rapee are bound by the forum-selection

11

clause as "transaction participants."[6] In Appellants Rieder, Rapee, and Cadbury's appeal from the trial court's order denying their special appearances concerning Intervenors' claims, Appellants Rieder, Rapee, and Cadbury argue that the forum-selection clause is not enforceable on the ground of forum non conveniens and that Intervenors cannot enforce the forum-selection clause against Rieder and Rapee in their individual capacities.[7] Intervenors—as appellees in Rieder, Rapee, and Cadbury's appeal from the trial court's denial of their special appearances as to Intervenors' claims—address Appellants Rieder, Rapee, and Cadbury's forum non conveniens argument and adopt Cross-Appellant Woods's forum-selection clause arguments.[8]

---

[6]Because the issues presented in the table of contents of Cross-Appellant Woods's brief differ from the eight issues presented in the body of his brief, we address the latter.

[7]Because the issues presented in the table of contents of Appellants Rieder, Rapee, and Cadbury's opening brief differ from the three issues presented in the body of their brief, we address the latter.

[8]Intervenors, as appellees in Rieder, Rapee, and Cadbury's appeal, raise five issues in response to the three issues presented by Appellants Rieder, Rapee, and Cadbury. We address Intervenors' issues to the extent they dovetail with the issues presented by Appellants Rieder, Rapee, and Cadbury. In their first two issues, Intervenors argue that Appellants Rieder, Rapee, and Cadbury failed to challenge all grounds supporting the trial court's denial of the special appearance as to their claims and that Rieder, Rapee, and Cadbury made general appearances by contesting and seeking rulings on discovery propounded by Intervenors prior to filing a special appearance as to Intervenors' claims. Because we assume that the merits of Appellants Rieder, Rapee, and Cadbury's special appearance are before us, we need not address the arguments in Intervenors' first and second responsive issues.

12

## IV. Analysis[9]

### A. Existence and Enforceability of Forum-Selection Clause

Concerning the existence of a forum-selection clause, the CQuentia/Cadbury Series Agreement contains one. As quoted above, that clause provides, in pertinent part, that "any claims or controversies under or related to" the CQuentia/Cadbury Series Agreement "shall be exclusively determined in the state and/or federal courts located in Tarrant County, Texas, to whose jurisdiction each party irrevocably consents." Appellants Rieder, Rapee, and Cadbury argue on appeal that the forum-selection clause is not enforceable against Cadbury based on forum non conveniens; Appellants Rieder and Rapee make separate arguments alleging that the forum-selection clause is not enforceable against them based on forum non conveniens.[10]

---

[9]Our analysis is unavoidably tedious. Appellants Rieder, Rapee, and Cadbury make some joint arguments and some individual arguments and their arguments differ as between Intervenor Meeker and Intervenor CQuentia and as cross-appellees in Cross-Appellant Woods's appeal. Cross-Appellant Woods raises eight issues in his appeal, and Appellee Intervenors raise five independent issues in their brief. We address some of these issues jointly. Some of the issues we need not address because they are unnecessary to the disposition of this appeal. *See* Tex. R. App. P. 47.1.

[10]Intervenors argue that we lack interlocutory jurisdiction to address the trial court's denial of Appellants Rieder, Rapee, and Cadbury's motion for dismissal based on forum non conveniens. We disagree. Here, we review Appellants Rieder, Rapee, and Cadbury's forum non conveniens arguments not as stand-alone complaints stemming from the denial of a motion to dismiss but in the context of Appellants Rieder, Rapee, and Cadbury's challenge to the enforceability of the forum-selection clause as a basis for the trial court's exercise of personal jurisdiction over them. *See, e.g.*, *Bogart v. Star Bldg. Sys.*, No. 01-10-00446-CV, 2011 WL 846566, at *3 (Tex. App.—Houston [1st Dist.] Mar. 10, 2011, pet. denied) (mem. op.) (addressing appellant's forum non conveniens argument in interlocutory special appearance appeal when

## 1. Cadbury's forum non conveniens unenforceability contentions as to Intervenor CQuentia's claims

Although Cadbury concurred in the trial court and agrees on appeal that the claims against it asserted by CQuentia do fall within the forum-selection clause in the CQuentia/Cadbury Series Agreement, Cadbury nonetheless asserts that the forum-selection clause is unenforceable as to Cross-Appellant Woods's and Intervenors' claims against Cadbury based on the fourth *Nationwide* factor—that the selected forum (Texas) would be seriously inconvenient for trial. *See Nationwide Ins. Co. of Am.*, 494 S.W.3d at 712. But by entering into the CQuentia/Cadbury Series Agreement, Cadbury effectively represented that Texas was not so inconvenient of a forum as to deprive Cadbury of its day in court. *See In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010) (orig. proceeding) ("By entering into an agreement with a forum-selection clause, the parties effectively represent to each other that the agreed forum is not so inconvenient that enforcing the clause will deprive either party of its day in court, whether for cost or other reasons" (quoting *Lyon Fin. Serv. Inc.*, 257 S.W.3d 228, 234 (Tex. 2008) (orig. proceeding))). Cadbury—as a signatory to the CQuentia/Cadbury Series Agreement containing the forum-selection clause and as the party challenging the enforcement of the forum-selection clause—thus bore a heavy burden of proof to establish the inconvenience of litigation in Texas—the forum Cadbury contractually

appellant's forum non conveniens argument was asserted as basis for non-enforceability of the forum-selection clause.).

14

agreed to. *See id.* Absent clear proof of "special and unusual circumstances," trial in another forum is not "so gravely difficult and inconvenient" as to warrant disregarding the contractually-specified forum. *Id.* (quoting *AIU Ins. Co.*, 148 S.W.3d 109, 113 (Tex. 2004) (orig. proceeding)); *see also Lyon Fin. Servs., Inc.*, 257 S.W.3d at 234 (explaining that "[i]f merely stating that financial and logistical difficulties will preclude litigation in another state suffices to avoid a forum-selection clause, the clauses are practically useless").

Our close review of Cadbury's forum non conveniens arguments and of the record reveal no arguments or clear evidence establishing that Texas is a seriously inconvenient forum such that, in effect, Cadbury will be deprived of its day in court if litigation proceeds in Texas. Because we agree with the portion of Appellee Intervenors' fourth issue asserting that Rieder, Rapee, and Cadbury's forum non conveniens argument as to Cadbury lacks merit, we overrule the portions of Appellants Rieder, Rapee, and Cadbury's first and second issues that argue forum non conveniens as a ground for defeating enforcement of the forum-selection clause set forth in the CQuentia/Cadbury Series Agreement against Cadbury.

### 2. Rieder and Rapee's forum non conveniens unenforceability contentions as to Intervenors' claims

Concerning the enforceability of the forum-selection clause as to Intervenors' claims, Rieder and Rapee do not assert any of the *Nationwide* factors for unenforceability of the forum-selection clause; they do not argue that the forum-

15

selection clause is unenforceable because Texas is a seriously inconvenient forum.[11]

Because Rieder and Rapee did not assert any basis for the unenforceability of the forum-selection clause, we overrule the portions of Appellants Rieder, Rapee, and Cadbury's first and second issues presented in their Brief of Appellants that argue forum non conveniens as a ground to defeat enforcement by Intervenors of the forum-selection clause set forth in the CQuentia/Cadbury Series Agreement against Rieder and Rapee. *See, e.g.*, *Lisa Laser USA, Inc.*, 310 S.W.3d at 884 (not addressing enforceability after noting that "HealthTronics does not argue that the forum-selection clause is unenforceable").

### 3. Cross-Appellees Rieder, Rapee, and Cadbury's forum non conveniens unenforceability contention as to Cross-Appellant Woods's claims

In his eighth issue, Cross-Appellant Woods argues that "Defendants' forum non conveniens position is untenable." Concerning the unenforceability of the forum-selection clause as to Cross-Appellant Woods's claims against Cross-Appellees Rieder, Rapee, and Cadbury, they do not assert on appeal that the forum-selection

---

[11]Instead, as to Intervenor Meeker's claims, Rieder, Rapee, and Cadbury generally assert in their Brief of the Appellants and in their Reply Brief of the Appellants that Meeker's claim for declaratory relief should be decided by a Wisconsin court because Woods's first-filed Texas suit was an anticipatory suit for declaratory relief. The cases cited by Rieder, Rapee, and Cadbury in support of this proposition, however, do not involve a forum-selection clause; instead, they apply the "first-to-file" rule to decide where a suit should proceed when it is filed in two permissive forums. *See Mill Creek Press, Inc. v. Thomas Kinkade Co.*, No. CIVA.3:04-CV-1213-G, 2004 WL 2607987, at *4–5 (N.D. Tex. Nov. 16, 2004) (mem. order) (explaining the "first-to-file" rule).

16

clause should not be enforced because Texas is *a seriously inconvenient forum* for the litigation of Cross-Appellant Woods's claims.[12] *See, e.g.*, *Harland Clarke Holdings Corp.*, 997 F. Supp. 2d at 572. The equitable forum-non-conveniens arguments presented by Cross-Appellees Rieder, Rapee, and Cadbury in Cross-Appellant Woods's appeal do not support the trial court's sustaining of Rieder, Rapee, and Cadbury's special appearance as to Woods's claims; Rieder, Rapee, and Cadbury's equitable forum-non-conveniens arguments are not germane because they apply a legal standard not

[12]As to Cross-Appellant Woods's claims, Cross-Appellees Rieder, Rapee, and Cadbury set forth a general, equitable forum-non-conveniens analysis without reference to the forum-selection clause. They rely on *Direct Color Servs., Inc. v. Eastman Kodak Co.*, 929 S.W.2d 558, 562 (Tex. App.—Tyler 1996, writ denied), for the proposition that "[f]orum non conveniens is an equitable doctrine exercised by courts to resist imposition of an inconvenient jurisdiction on a litigant, even if jurisdiction is supported by the long-arm statute and would not violate due process." They argue that "Woods has not shown why Wisconsin would be an inadequate forum for adjudicating this dispute." But this equitable forum-non-conveniens analysis is adjusted when a forum-non-conveniens motion is premised on a forum-selection clause. *See Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 2d 561, 572 (W.D. Tex. 2014) ("[T]he typical [federal forum-non-conveniens] analysis is adjusted when the transfer motion is premised on a forum-selection clause" (citing *Atl. Marine Constr. Co. v. United States Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013))). The practical effect of this adjusted analysis is that forum-selection clauses should control except in unusual cases. *See id.*; *see also Bright LLC v. Best W. Int'l, Inc.*, No. 16-CV-02500-JAR, 2017 WL 552292, at *3 (D. Kan. Feb. 10, 2017) (mem. & order) (explaining that when determining a forum-selection clause's enforceability, the forum-non-conveniens analysis "should not be about the parties' private interest, but instead should address the public-interest factors"); *Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.*, 234 S.W.3d 679, 692 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (recognizing that the Supreme Court of Texas abandoned the "interests of the witnesses and the public" prongs of the forum-selection-clause analysis in determining whether to enforce a mandatory forum-selection clause and that, by so arguing, the Deep Water Parties had premised their forum-non-conveniens argument on the wrong legal standard).

17

applicable when a forum-selection clause is pleaded as the basis for personal jurisdiction. *See Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 693 (rejecting same arguments as premised on the wrong legal standard); *see also Laibe Corp.*, 307 S.W.3d at 318 (explaining that conclusory statements are insufficient to establish the level of extreme inconvenience required to disregard a forum-selection clause (citing *In re ADM Investor Servs., Inc.*, 304 S.W.3d 371, 375 (Tex. 2010) (orig. proceeding))). We sustain Cross-Appellant Woods's eighth issue.

Having determined that no clear evidence of unenforceability exists, we presume the forum-selection clause in the CQuentia/Cadbury Series Agreement is enforceable and should be given full effect. We next address whether Cross-Appellant Woods's, Intervenor Meeker's, and Intervenor CQuentia's claims fall within the scope of the forum-selection clause.

## B. Do the Claims of Cross-Appellant Woods, Intervenor Meeker, and Intervenor CQuentia Fall within the Scope of the Forum-Selection Clause?

### 1. The Scope of the Forum-Selection Clause

To determine the scope of the CQuentia/Cadbury forum-selection clause, our starting point is the intent of the parties as ascertainable from the specific language of the forum-selection clause. *See Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 437. The specific language of the CQuentia/Cadbury Series Agreement's forum-selection clause provides that "any claims or controversies under or related to" the CQuentia/Cadbury Series Agreement "shall be exclusively determined in the state

18

and/or federal courts located in Tarrant County, Texas, to whose jurisdiction each party irrevocably consents." The forum-selection clause's use of the word "shall" makes this a mandatory forum-selection clause. *See Phoenix Network Techs.,* 177 S.W.3d at 615.

The forum-selection clause's "any claims or controversies under or related to" language is very broad. The term "controversies" encompasses more than just "claims," i.e., legal actions; the use of the term "controversies" shows an agreement that the forum-selection clause will apply to matters other than breach-of-contract claims. *See Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 439 (stating that "[w]hen a forum-selection clause encompasses all 'disputes' 'arising out of' the agreement, instead of 'claims,' its scope is necessarily broader than claims based solely on rights originating exclusively from the contract"); *see also In re Bambu Franchising LLC,* No. 05-17-00690-CV, 2017 WL 4003428, at *3 (Tex. App.—Dallas Sept. 12, 2017, orig. proceeding) (mem. op.).

The forum-selection clause's "related to this agreement [the CQuentia/Cadbury Series Agreement]" language is also very broad. *See, e.g., In re Longoria*, 470 S.W.3d 616, 628 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding) (explaining that courts have consistently interpreted "related to" language in forum-selection clauses as broad and collecting cases); *JFP Servs., L.L.C. v. Torans*, Nos. SA-17-CV-00210-FB, SA-17-CV-1031-DAE, 2018 WL 3326841, at *7 (W.D. Tex. Apr. 30, 2018) (report & recommendation) ("Texas courts interpret the phrase 'relate to' even more broadly

19

than the phrase 'arising out of,' concluding that the language signifies an intent to encompass 'all claims that have some possible relationship with the agreement.'" (citing *In re Counsel Fin. Servs., L.L.C.*, No. 13-12-00151-CV, 2013 WL 3895317, at \*5 (Tex. App.—Corpus Christi July 25, 2013, orig. proceeding) (mem. op.) (collecting cases interpreting clauses containing "relate to"))); *see also John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (construing forum-selection clause's language encompassing "any dispute . . . in relation to" the forum-selection-clause-containing contract as including within its scope any dispute having any "logical or causal connection" to the contract).

We examine the nexus or relationship that is required to exist between the substance of the asserted claims, disputes, or controversies (as dictated by the language of the forum-selection clause) and the forum-selection-clause-containing contract. That is, we examine whether the matters in controversy involve, relate to, arise from, or are connected in some other way (as dictated by the language of the forum-selection clause) to the contract containing the forum-selection clause. *See, e.g.,* *Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 438 (applying the "but for" nexus test when the forum-selection clause applied to "any dispute arising out of" the forum-selection-clause-containing contract); *JFP Servs., L.L.C.*, 2018 WL 3326841, at \*7 (recognizing that counterclaim for tortious interference with a contract other than the forum-selection-clause-containing contract "may not pass the but-for [relationship] test" applied in *Pinto Tech Ventures* to the forum-selection clause's "arising out of"

20

relationship language but would still fall within the "relate to" relationship language of the forum-selection clause at issue in *JFP Servs., L.L.C.*).

Other courts[13] addressing the scope of mandatory forum-selection clauses that contain language similar to the CQuentia/Cadbury Series Agreement's forum-selection clause's language have held that the scope of those forum-selection clauses included both tort and breach-of-contract claims related to the forum-selection-clause-containing contract,[14] other tort claims,[15] and even claims for breach of a different contract when these claims were interrelated with the forum-selection-clause-containing contract[16] and the essential allegations of the claims were inextricably enmeshed or factually intertwined with the underlying contract containing

---

[13]We include federal cases in our analysis, as did the Texas Supreme Court in *Pinto Tech. Ventures, L.P. See* 526 S.W.3d at 438 ("[e]xamining federal [forum-selection] law for further guidance").

[14]*See Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 440; *My Café–CCC, Ltd. v. Lunchstop, Inc.,* 107 S.W.3d 860, 866 (Tex. App.—Dallas 2003, no pet.) ("Pleading alternative noncontractual theories of recovery will not alone avoid a forum[-]selection clause if those alternative claims arise out of the contractual relations and implicate the contract's terms.").

[15]*See JFP Servs., L.L.C.*, 2018 WL 3326841, at *7 (holding claim for tortious interference with contract other than forum-selection-containing contract was nonetheless "related to" forum-selection-containing contract so as to fall within its scope).

[16]*See, e.g., Bright LLC*, 2017 WL 552292, at *3–4 (enforcing forum-selection clause contained in Membership Agreement contract although suit was based on Terms of Agreement contract because "courts have enforced forum-selection clauses in contracts not directly at issue but interrelated to the contract in the complaint").

21

the forum-selection clause. *See Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 440; *see also, e.g.*, *In re Bloom Bus. Jets, LLC*, 522 S.W.3d 764, 769 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding); *Longoria*, 470 S.W.3d at 628. In such cases, the forum-selection clause should be denied force only if the facts alleged in support of the claim stand alone and are completely independent of the forum-selection-clause-containing contract and if the claim could be maintained without reference to that contract. *Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 440.

In ascertaining the parties' intentions with regard to the scope of the forum-selection clause in the CQuentia/Cadbury Series Agreement, we are to construe the CQuentia/Cadbury Series Agreement and its forum-selection clause from a utilitarian standpoint, bearing in mind the particular business activity sought to be served. *See, e.g.*, *Frost Nat'l Bank v. L&F Distrib., Ltd.*, 165 S.W.3d 310, 310–12 (Tex. 2005). The record before us establishes the following facts: Cadbury was created by Woods, Rieder, and Rapee for the purpose of entering into business with CQuentia (whose CEO is Meeker); the Cadbury Operating Agreement was signed by Woods, Rieder, and Rapee, and the CQuentia/Cadbury Series Agreement was signed by Woods for Cadbury and by Meeker for CQuentia; and the Cadbury Operating Agreement and the CQuentia/Cadbury Series Agreement both contained the same effective date and were executed near the same date. Consequently, these two contracts—the Cadbury Operating Agreement and the CQuentia/Cadbury Series Agreement—are part of the same business transaction and were entered into for the unitary purpose of enabling

22

Woods, Rieder, and Rapee (as Cadbury) to do business with CQuentia, so we read these two contracts together as the expression of the parties' intent as to the agreement between them.[17] *See, e.g., Laibe Corp.*, 307 S.W.3d at 317 (reading invoice and subsequent equipment purchase contract together because they "pertained to the same transaction"); *Fort Worth ISD*, 22 S.W.3d at 840 (reading two Fort Worth ordinances and "contemporaneous, related documents" as together comprising city's contract with local school district because they were all made at the same time and concerned a common subject); *see also Castillo Info. Tech. Servs., LLC v. Dyonyx, L.P.*, 554 S.W.3d 41, 46 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (collecting cases).

## 2. Cross-Appellant Woods's Claims

Having examined the meaning of the CQuentia/Cadbury Series Agreement's broad forum-selection clause language indicating that the clause applies to any controversies related to the CQuentia/Cadbury Series Agreement, we next examine whether Cross-Appellant Woods's pleaded claims against Cross-Appellees Rieder, Rapee, and Cadbury present "controversies" "related to" the CQuentia/Cadbury Series Agreement. To determine whether Cross-Appellant Woods's claims fall within the scope of the forum-selection clause, we first look to the factual allegations

---

[17]As set forth below, in section IV.B.2., Cross-Appellant Woods's claims fall within the scope of the forum-selection clause even if the CQuentia/Cadbury Series Agreement is read alone without reference to the Cadbury Operating Agreement. We explain here that the two agreements are part and parcel of the same transaction because we construe them together for purposes of our subsequent "transaction-participant" analysis set forth in section IV.C.3.

supporting his complaints to determine whether—engaging in a common-sense examination of the substance of his claims—those claims are factually premised on the validity, terms, or performance of the CQuentia/Cadbury Series Agreement or intertwined with it. *See Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 439–40. We then focus on whether the requisite "related to" relationship exists between Cross-Appellant Woods's disputes with Cross-Appellees Rieder, Rapee, and Cadbury and the CQuentia/Cadbury Series Agreement. *See id.*

A review of the factual allegations in Cross-Appellant Woods's live pleadings against Cross-Appellees Rieder, Rapee, and Cadbury establishes that Cross-Appellant Woods's claims for a declaratory judgment, tortious interference, fraud, and breach of contract are all premised on the same operative facts:

• Cross-Appellant Woods's declaratory judgment claim sought a declaration "as to the legal relations between himself on the one hand and Rieder, Rapee, and Cadbury on the other"; sought a "declaration as to any obligations Woods may have to Cadbury, which entity Woods maintains, pleading in the alternative, never became legally efficacious"; and sought a declaration that, "regardless of whether Cadbury is viable, it never entered into any legally enforceable contract with [CQuentia] because any such relationship was never undertaken or ratified by the Board."

• Cross-Appellant Woods's tortious interference claim pleaded that Cadbury, Rieder, and Rapee—"[b]y now threatening [CQuentia] with legal action if it maintains its business relationship and/or contractual relationship with Woods"—"are tortiously interfering with that relationship" and that "[t]hese tortious actions . . . relate to the [CQuentia/Cadbury Series Agreement], which has a mandatory forum and venue clause for resolving such a dispute in Tarrant County, Texas."

24

• Cross-Appellant Woods's fraud claim alleged that Rieder and Rapee made representations and promises to Woods "to induce [him] into entering into the Cadbury relationship which [was] supposed to generate substantial business[] [but] did not do so" and that "Woods reasonably relied on those false representations and promises by agreeing to form Cadbury and provide efforts to obtain business for Cadbury, including with [CQuentia]."

• Cross-Appellant Woods's breach-of-contract claim alleged, in the alternative, that "Rieder and Rapee made offers to Woods as to bringing in business and a sales force if Woods would enter into the Cadbury LLC with them"; that "Woods accepted the offer and joined Cadbury as a Member (should the Court find Cadbury to be legally extant *arguendo*, pleading in the alternative)"; and that "Rieder and Rapee breached the agreement they had with Woods by, *inter alia*, not bringing in business and a sales force."

A common-sense view of the substance of Cross-Appellant Woods's claims shows that each of the claims involves the validity of the CQuentia/Cadbury Series Agreement or has a substantial connection to it. *See id.* at 439–40; *see also John Wyeth & Brother, Ltd.*, 119 F.3d at 1074. Cross-Appellant Woods seeks a declaration that the CQuentia/Cadbury Series Agreement is not valid because Cadbury's Board did not approve it as required by the Cadbury Operating Agreement—this claim presents a controversy that is related to the CQuentia/Cadbury Series Agreement.[18] Cross-Appellant Woods premises his tortious interference claim on Cross-Appellees Rieder, Rapee, and Cadbury's threat of legal action against CQuentia if CQuentia continues a

[18]As Cross-Appellant Woods notes in his brief, "How could anything be more 'related to' a contract than whether it is a valid contract or not?"

25

previously existing contractual relationship or business relationship with Woods—this is a controversy related to, or with a substantial connection to, the CQuentia/Cadbury Series Agreement because Rieder, Rapee, and Cadbury have no relationship with CQuentia outside the CQuentia/Cadbury Series Agreement. *See Harland Clarke Holdings Corp.*, 997 F. Supp. at 574 (citing *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164–65 (5th Cir.) (holding that when parties agree to an arbitration clause governing "[a]ny dispute . . . relating to this Agreement," they "intend the clause to reach all aspects of the relationship"), *cert. denied*, 525 U.S. 876 (1998)). Cross-Appellant Woods's fraud claim and alternative breach-of-contract claim are also factually intertwined with the CQuentia/Cadbury Series Agreement; Cross-Appellant Woods pleaded that Rieder and Rapee made false representations to him about their abilities to bring business to a Cadbury/CQuentia deal to induce him to form Cadbury and then failed to keep or breached the promises they had made in exchange for Woods's participation in Cadbury. *See id.* at 575 (citing *Personal Security & Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 393 (5th Cir. 2002), and holding arbitration provision applicable to all disputes related to the agreement applied to fraudulent misrepresentations made during negotiations leading up to the agreement). Applying the "related to" nexus required by the CQuentia/Cadbury Series Agreement's forum-selection clause, we hold that the substance of Cross-Appellant Woods's pleaded theories of recovery against Rieder and Rapee falls within the scope of the forum-selection clause. Cross-Appellant Woods's petition reveals the central

26

role the CQuentia/Cadbury Series Agreement plays in each of his claims; the existence of the CQuentia/Cadbury Series Agreement is a primary operative fact in the controversies; and the requisite "related to" nexus is evident because each of Woods's claims is "related to" the CQuentia/Cadbury Series Agreement in that the facts alleged in support of Woods's claims cannot stand alone, completely independent of the CQuentia/Cadbury Series Agreement, and the claims could not be maintained without reference to it. *See Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 439–40. Accordingly, we hold that Cross-Appellant Woods's claims fall within the scope of the CQuentia/Cadbury Series Agreement's forum-selection clause, and we sustain the portions of Cross-Appellant Woods's first issue so asserting.

### 3. Intervenor Meeker's Claims

Looking to the substance of Intervenor Meeker's live pleading, he factually pleaded the following: that he operates CQuentia Series, LLC and that he discussed a potential arrangement with Woods for Woods to supply marketing and sales services to CQuentia; that he discussed with Woods, Rieder, and Rapee the creation by Woods, Rieder, and Rapee of a sales organization that would market and sell CQuentia's genetic testing products; and that, ultimately, he was informed that Woods, Rieder, and Rapee had created Cadbury for this purpose. According to Meeker's pleading, Rieder and Rapee promised to bring in voluminous deal flow to the CQuentia/Cadbury Series Agreement, but they never did. Meeker pleaded that he later learned that Cadbury had not become operational and had in fact entered into

27

the CQuentia/Cadbury Series Agreement before Cadbury's own Operating Agreement was executed. Consequently, Meeker—on behalf of CQuentia— terminated the CQuentia/Cadbury Series Agreement and decided to move forward with Woods as the provider of marketing and sales services to CQuentia "inasmuch as their relationship predated Cadbury."

Intervenor Meeker pleaded for two declaratory judgments. First, Intervenor Meeker requested a declaration that he and any entity he operates has the right to utilize Woods's services without incurring liability under paragraph 12 of the Cadbury Operating Agreement and, second, he sought a declaration that, as the CEO of CQuentia, he had the right to end the CQuentia/Cadbury Series Agreement under paragraph 5(c) of the CQuentia/Cadbury Series Agreement.

In their second and third issues, respectively, Appellants Rieder, Rapee, and Cadbury argue that the trial court should have dismissed Intervenor Meeker's first claim for declaratory relief—regarding his right to hire Woods without incurring liability under the Cadbury Operating Agreement—for lack of personal jurisdiction or forum non conveniens and that the trial court should have dismissed or severed Intervenor Meeker's second claim for declaratory relief—regarding his right to terminate the CQuentia/Cadbury Series Agreement. According to Rieder, Rapee, and Cadbury, Intervenor Meeker's first claim belongs in the Wisconsin court because it is related to the viability of the Cadbury Operating Agreement and because Rieder,

28

Rapee, and Cadbury are Wisconsin residents.[19] Rieder, Rapee, and Cadbury further argue that Intervenor Meeker's second declaratory judgment claim—regarding his right to terminate the CQuentia/Cadbury Operating Agreement—should be dismissed or severed and abated pending the outcome of the Wisconsin suit. Intervenors—as appellees in Rieder, Rapee, and Cadbury's appeal—contend in their fifth responsive issue that we lack jurisdiction to review Rieder, Rapee, and Cadbury's motion to sever because the trial court never ruled on it.

Our analysis of whether Intervenor Meeker's claims against Rieder, Rapee, and Cadbury fall within the scope of the CQuentia/Cadbury Series Agreement's forum-selection clause mirrors the scope-of-the-forum-selection-clause analysis we performed to determine whether Woods's claims against Rieder, Rapee, and Cadbury fell within the scope of the forum-selection clause. We first look to the factual allegations supporting Intervenor Meeker's complaints to determine whether—engaging in a common-sense examination of the substance of them—they involve the validity, terms, or performance of the CQuentia/Cadbury Series Agreement or have a substantial connection to it. *See id.*

---

[19]Rieder, Rapee, and Cadbury also assert that Intervenor Meeker's first declaratory judgment claim is an "anticipatory suit" that should be treated differently under a forum-selection-clause analysis. But we apply the same analysis to determine whether Intervenor Meeker's claim for declaratory relief (anticipatory or not) falls within the scope of the CQuentia/Cadbury Series Agreement's forum-selection clause as we apply to determine whether any other claim falls within the scope of a particular forum-selection clause. *See, e.g.*, *Bloom Business Jets, LLC*, 522 S.W.3d at 770 (explaining that declaratory relief could be sought in contractually agreed-to forum).

A review of the factual allegations in Intervenor Meeker's live pleading against Rieder, Rapee, and Cadbury shows that his two claims for declaratory judgment are premised on the same operative facts. The substance of Intervenor Meeker's request—for a declaratory judgment that he and any entity he operates may continue to utilize Woods's services without running afoul of the Cadbury Operating agreement—is factually intertwined with the CQuentia/Cadbury Series Agreement; if Cadbury had not entered into the CQuentia/Cadbury Series Agreement, no basis would exist for Cadbury to threaten litigation against CQuentia based on Woods's work for CQuentia.

Applying the "related to" nexus required by the CQuentia/Cadbury Series Agreement's forum-selection clause, we hold that Intervenor Meeker's petition reveals the central role the CQuentia/Cadbury Series Agreement plays in both of his declaratory-judgment claims. Intervenor Meeker's declaratory-judgment claims are at least "related to" the CQuentia/Cadbury Series Agreement because that agreement governs any relationship that exists between Meeker and Rieder, Rapee, and Cadbury. Absent the CQuentia/Cadbury Series Agreement, Meeker would have no relationship with Rieder, Rapee, and Cadbury, and no controversy between them would exist. *See id.*; *see also Harland Clarke Holdings Corp.*, 997 F. Supp. 2d at 575 (explaining plaintiff's claims "are related to the Purchase Agreement, the Guarantee, and the transactions contemplated thereby (*i.e.*, the purchase of GlobalScholar) and thus fall within the scope of the mandatory forum-selection clause"); *Longoria*, 470 S.W.3d at 628

30

(collecting cases involving forum-selection clauses covering claims "related to" forum-selection-clause-containing contracts). We hold that Intervenor Meeker's two claims for declaratory relief fall within the scope of the CQuentia/Cadbury Series Agreement's forum-selection clause. *See, e.g.*, *JFP Servs., L.L.C.*, 2018 WL 3326841, at *7 ("Texas courts interpret the phrase 'relate to' . . . [as] signif[ying] an intent to encompass 'all claims that have some possible relationship with the agreement.'").

We overrule Appellants Rieder, Rapee, and Cadbury's second issue arguing that the trial court should have dismissed Intervenor Meeker's first claim for declaratory relief—regarding his right to hire Woods without incurring liability under the Cadbury Operating Agreement—for lack of personal jurisdiction because that claim falls within the scope of the forum-selection clause. *See, e.g.*, *Bloom Bus. Jets*, 522 S.W.3d at 770. Because—as pointed out by Intervenors—Appellants Rieder, Rapee, and Cadbury did not set a hearing on their motion to sever and abate Intervenor Meeker's second claim for declaratory relief regarding his right to terminate the CQuentia/Cadbury Series Agreement and because the trial court did not rule on it, Appellants Rieder, Rapee, and Cadbury's complaint that the trial court did not grant that motion is not properly before us. *See* Tex. R. App. P. 33.1 (stating that to "preserve a complaint for appellate review, the record must show . . . that the trial court . . . ruled on the request . . . either expressly or implicitly"). We therefore also overrule the portions of Appellants Rieder, Rapee, and Cadbury's second and third issues arguing that the trial court should have dismissed or severed and abated Intervenor Meeker's second claim for

31

declaratory relief—regarding his right to terminate the CQuentia/Cadbury Series Agreement—pending the outcome of the Wisconsin suit.

### 4. Intervenor CQuentia's Claims

In a portion of Appellants Rieder and Rapee's first issue, they argue that the trial court erred by denying their special appearance and forum non conveniens motion as to Intervenor CQuentia's claims for fraud, fraudulent inducement, and negligent misrepresentation.[20] Our analysis of whether Intervenor CQuentia's claims against Rieder and Rapee fall within the scope of the CQuentia/Cadbury Series Agreement's forum-selection clause mirrors the scope-of-the-forum-selection-clause analysis we performed to determine whether Cross-Appellant Woods's and Intervenor Meeker's claims against Rieder, Rapee, and Cadbury fell within the scope of the forum-selection clause.

Intervenor CQuentia pleaded that the trial court possessed personal jurisdiction over Rieder, Rapee, and Cadbury because "this matter is related to a contract signed by Defendant Cadbury in which such defendant 'irrevocably' consented to the personal jurisdiction of this Court" and because "[a]ccording to Defendants Rieder and Rapee, they were managing members of Defendant Cadbury when this irrevocable consent was provided." Intervenor CQuentia's claims for fraud,

---

[20]As previously mentioned, Cadbury agrees that Intervenor CQuentia's claims against it fall within the CQuentia/Cadbury Series Agreement's forum-selection clause.

32

fraudulent inducement, and negligent misrepresentation pleaded against Rieder and Rapee are each factually premised on allegations that Rieder and Rapee had represented to Intervenor CQuentia that they possessed "substantial contacts in the medical field[] and both could and would generate significant business for CQuentia, if an agreement could be struck among the parties." Intervenor CQuentia pleaded that Rieder, Rapee, and Woods formed Cadbury and were managing members of Cadbury but that "none of the voluminous deal flow promised by Rieder and Rapee ever materialized."

A common-sense view of the factual basis for Intervenor CQuentia's claims shows that Intervenor CQuentia's fraud, fraudulent inducement, and negligent misrepresentation claims all revolve around the CQuentia/Cadbury Series Agreement; Rieder's and Rapee's alleged conduct and representations to Intervenor CQuentia to facilitate the CQuentia/Cadbury Series Agreement; and Rieder's, Rapee's, and Woods's creation of Cadbury via the Cadbury Operating Agreement for the purpose of entering into the CQuentia/Cadbury Series Agreement. *See Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 440. Intervenor CQuentia's allegations of various misconduct against Rieder and Rapee are "inextricably enmeshed" in or "factually intertwined" with the CQuentia/Cadbury Series Agreement, as well as with the Cadbury Operating Agreement. *See id.* Concerning the required "related to" relationship utilized to analyze whether the substance of Intervenor CQuentia's pleaded theories of recovery against Rieder and Rapee fall within the scope of the forum-selection clause, the

33

requisite "related to" nexus is evident. As with Intervenor Meeker's claims, Intervenor CQuentia's pleaded claims against Rieder and Rapee involve the validity, terms, or performance of the CQuentia/Cadbury Series Agreement or have "some possible relationship" with it. *See, e.g.*, *JFP Servs., L.L.C.*, 2018 WL 3326841, at *7. The CQuentia/Cadbury Series Agreement creates and governs any possible relationship that exists between Intervenor CQuentia and Rieder and Rapee and apart from the CQuentia/Cadbury Series Agreement, no controversy would exist between them. *See Personal Security & Safety Sys., Inc.*, 297 F.3d at 393 (recognizing that arbitration clause's language subjecting all disputes related to the arbitration-clause-containing contract to arbitration included any fraudulent misrepresentations made during negotiations leading up to the contract). The trial court thus properly concluded that Intervenor CQuentia's claims against Rieder and Rapee individually fell within the scope of the CQuentia/Cadbury Series Agreement's forum-selection clause. Accordingly, we overrule the portion of Appellants Rieder, Rapee, and Cadbury's first issue arguing that Intervenor CQuentia's claims against Rieder and Rapee do not fall within the scope of the forum-selection clause.

### C. Can Cross-Appellant Woods, Intervenor Meeker, and Intervenor CQuentia Enforce the Forum-Selection Clause Against Rieder and Rapee Individually?

Although we have held that Cross-Appellant Woods's, Intervenor Meeker's, and Intervenor CQuentia's claims all fall within the scope of the CQuentia/Cadbury Series Agreement's forum-selection clause, Rieder and Rapee argue that Cross-

34

Appellant Woods, Intervenor Meeker, and Intervenor CQuentia cannot enforce the forum-selection clause against them individually because they are corporate officers of Cadbury who did not sign the CQuentia/Cadbury Series Agreement.[21]

### 1. The Parties' Positions

Cross-Appellant Woods contends in his pleading and on appeal that he can enforce the CQuentia/Cadbury Series Agreement's forum-selection clause against Rieder and Rapee because Rieder and Rapee "expressly consented to the exclusive jurisdiction, forum, and venue in Tarrant County by virtue of the forum-selection clause in the CQuentia/Cadbury Series Agreement." Cross-Appellant Woods points out the following: that Rieder and Rapee were managing board members of Cadbury; that Cross-Appellant Woods had signed the CQuentia/Cadbury Series Agreement on behalf of Cadbury; that the Cadbury Operating Agreement required that all three Cadbury managing board members (i.e., Woods, Rieder, and Rapee) approve Cadbury's agreement to the CQuentia/Cadbury Series Agreement; and that Woods's action alone could not bind Cadbury. Based on these facts, Cross-Appellant Woods alleges that Rieder and Rapee (as managing board members of Cadbury, which under Rieder and Rapee's theory became operational) must have consented (as required by

---

[21]Rieder and Rapee cite *Kelly v. Gen. Interior Constr., Inc.*, 262 S.W.3d 79, 83 (Tex. App—Houston [14th Dist.] 2008), *rev'd in part on other grounds*, 301 S.W.3d 653 (Tex. 2010), for the proposition that "[a] corporate officer who signs a contract on behalf of his corporation is not a party to the contract, but acting in his corporate capacity. Such act does not constitute a contact for purposes of personal jurisdiction." *Kelly* addresses minimum contacts, not forum-selection clauses.

the Cadbury Operation Agreement) to Cadbury's execution of the CQuentia/Cadbury Series Agreement that contains the forum-selection clause. Cross-Appellant Woods then argues that Rieder and Rapee, individually as managing board members of Cadbury who consented to the CQuentia/Cadbury Series Agreement, are "transaction participants" in the CQuentia/Cadbury Series Agreement against whom it was foreseeable that the CQuentia/Cadbury forum-selection clause would be enforceable and that, therefore, they are bound by it. Intervenors expressly adopt Cross-Appellant Woods's arguments and the evidence supporting his contentions that "the forum-selection clause requires that a Texas court adjudicate Intervenors' claims against all Defendants."

## 2. Cross-Appellant Woods's Enforcement of the Forum-Selection Clause Against Rieder and Rapee Individually

The Cadbury Operating Agreement governing the relationship between Woods, Rieder, and Rapee as co-managers and board members of Cadbury provides in paragraph 8(d) as follows:

> Board Exculpation. No Board Member, officer, or agent appointed by the Board, individually or severally, will be liable, responsible, or accountable in damages or otherwise to the Company or to any Member for any acts performed or omitted by him or her related to the Company, *except: (i) for any breach of the Board Member's duty of loyalty to the Company or its Members; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) for breaches of this Agreement; or (iv) for any transaction from which the Board Member derived an improper personal benefit. Each of the persons referenced above in this section is an express third-party beneficiary of this section.* [Emphasis added.]

36

As set forth in paragraph 8(d), Rieder and Rapee (to the extent Cadbury became operational) agreed in the Cadbury Operating Agreement that, as board members of Cadbury, they could be held liable to each other and to Cross-Appellant Woods individually for acts performed or omitted by them relating to Cadbury and constituting a breach of the duty of loyalty, for acts or omissions not in good faith or which involved intentional misconduct, for breaches of the Cadbury Operating Agreement, and for any transaction from which they derived an improper personal benefit. Thus, the three Cadbury managing board members—Rieder, Rapee, and Woods—contractually agreed in the Cadbury Operating Agreement that they could be sued by each other in their individual capacities under certain circumstances. Cross-Appellant Woods's claims against Rieder and Rapee individually—for declaratory judgment, for tortious interference, for fraud, and for breach of the Cadbury Operating Agreement—allege such circumstances.

The intent of the parties—as reflected by construing the CQuentia/Cadbury Series Agreement and the Cadbury Operating Agreement together, including the forum-selection clause and paragraph 8(d), respectively—was for the agreements to apply to the type of claims that Cross-Appellant Woods alleges against Rieder and Rapee individually and was for those claims to be determined in Tarrant County. *See Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 432; *Laibe Corp.*, 307 S.W.3d at 317; *Fort Worth ISD*, 22 S.W.3d at 840. Rieder and Rapee agreed in paragraph 8(d) to be subject to suit in their individual capacities by Cadbury board member Woods for acts or

omissions breaching their duties of loyalty to Cadbury (Cross-Appellant Woods's fraud claim), for breaching the Cadbury Operating Agreement (Cross-Appellant Woods's claim for declaratory judgment that the Cadbury Operating Agreement never became effective or, alternatively, for breach of the Cadbury Operating Agreement), and for acts or omissions not in good faith (Cross-Appellant Woods's fraud and tortious interference claims). Because, as set forth above in section IV.B.2., each of Cross-Appellant Woods's claims falls within the scope of the CQuentia/Cadbury Series Agreement's forum-selection clause and because, as set forth above in section III.B., we construe the CQuentia/Cadbury Series Agreement together with the Cadbury Operating Agreement such that Rieder, Rapee, and Woods agreed for such controversies to be determined in Tarrant County, Texas, we hold that the trial court abused its discretion by failing to enforce the forum-selection clause as to Cross-Appellant Woods's claims against Rieder and Rapee individually. We sustain the remainder of Cross-Appellant Woods's first issue.[22]

---

[22]Because we have held that the forum-selection clause is enforceable as to Cross-Appellant Woods's claims against Rieder and Rapee as individuals, we need not address Cross-Appellees Rieder, Rapee, and Cadbury's specific and general jurisdiction minimum-contacts arguments. *See Carlile Bancshares, Inc. v. Armstrong*, Nos. 02-14-00014-CV, 02-14-00018-CV, 2014 WL 3891658, at *5 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589–90, 111 S. Ct. 1522, 1525 (1991), and stating that the presence of a valid and enforceable forum-selection clause circumvents the need to conduct a due-process and minimum-contacts analysis because the clause acts as consent to jurisdiction in the contracted-for forum).

### 3. Cross-Appellant Woods, Intervenor Meeker, and Intervenor CQuentia can enforce the CQuentia/Cadbury Series Agreement's Forum-Selection Clause Against Rieder and Rapee as Transaction Participants

Numerous Texas courts have recognized "the transaction-participant doctrine," which provides that courts may enforce a valid forum-selection clause against certain "transaction participants" even if they are not actual signatories to the contract. *JFP Servs., L.L.C.*, 2018 WL 3326841, at *8 (citing *Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 444, describing doctrine, and collecting intermediate appellate cases). A transaction participant may include an employee of one of the contracting parties who is individually named by another contracting party in a suit arising out of the contract containing the forum-selection clause. *Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 444–45 (citing *Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 75 (Tex. App.—Dallas 1996, no writ)). A transaction participant may also include nonsignatories to the forum-selection-clause-containing contract who are signatories to additional contracts relating to the contract in dispute. *See, e.g.*, Monika L. Woodard, *Ghosts Have Rights Too! A New Era in Contractual Rights: Third-Party Invocation in Forum Selection Clauses*, 26 St. Thomas L. Rev. 467, 494 (2014) (explaining that "in order for a party to assert rights under this standard, the party claiming the rights must have signed at least one of the relating agreements, must show the agreements were executed simultaneously, and must show the agreements were executed by identical—or similar parties at the least—or were signed in collaboration to execute the same overall purpose").

39

Although Texas courts have not explicitly expanded the transaction-participant analysis beyond the context of a nonsignatory defendant attempting to enforce a forum-selection clause against a signatory plaintiff,[23] federal courts and other states have not so limited the doctrine. *See, e.g.*, *SSAB Ala., Inc. v. Kem-bonds, Inc.*, CV 17-0175-WS-C, 2017 WL 6345809, at *3 n.3 (S.D. Ala. Dec. 12, 2017) (order) (collecting cases and explaining that when "the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses"); *see also* Woodard, *Ghosts Have Rights Too! A New Era in Contractual Rights:  Third-Party Invocation in Forum Selection Clauses*, 26 St. Thomas L. Rev. at 487–95.  To the contrary, most federal courts have held that "the fact a party is a non[]signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum[-]selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.,* 585 F.3d 696, 701 (2d Cir. 2009) (collecting cases from the Third, Seventh, Eighth, Ninth, and Eleventh Circuit Courts of Appeals).

Federal and state courts have also applied a "closely-related" doctrine to determine whether a nonsignatory against whom the forum-selection clause is being asserted is, in fact, closely related to a signatory of the forum-selection-containing contract so that enforcement of the forum-selection clause against the nonsignatory is

---

[23]*See Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 444 (declining to address issue); *Carlile Bancshares, Inc.*, 2014 WL 3891658, at *16.

foreseeable by virtue of the nonsignatory's relationship with the signatory.  *See, e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Canal & Distrib. S.A.S.*, No. 07Civ.2918(DAB), 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010) (mem. & order) ("Under New York law, a signatory to a contract may invoke a forum[-]selection clause against a non[]signatory if the non[]signatory is 'closely related' to one of the signatories such that 'enforcement of the forum[-]selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound'"); *see also Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (holding forum-selection clause binds or benefits nonparties to the contract if their alleged conduct is closely related to the contractual relationship); *Harland Clarke Holdings Corp.*, 997 F. Supp. 2d at 583–84 (setting forth Delaware's three-step analysis to determine whether a forum-selection clause is enforceable against a nonsignatory based on the nonsignatory's close relationship with a signatory).  The closely-related doctrine factually overlaps the transaction-participant doctrine.  *Compare Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 444–46 (discussing "transaction-participant" doctrine), *with Harland Clarke Holdings Corp.*, 997 F. Supp. 2d at 583–84 (discussing Delaware's "closely-related" doctrine).

Here, the CQuentia/Cadbury Series Agreement's forum-selection clause may be enforced by Cross-Appellant Woods, Intervenor Meeker, and Intervenor CQuentia against Rieder and Rapee under either the transaction-participant doctrine or the closely-related doctrine.  As set forth in section IV.B.1., because the Cadbury

41

Operating Agreement and the CQuentia/Cadbury Series Agreement pertain to the same transaction, they are construed together to determine the parties' intent. *See Fort Worth ISD,* 22 S.W.3d at 840 (explaining that instruments pertaining to same transaction may be read together to ascertain parties' intent, "even if the parties executed the instruments at different times and the instruments do not expressly refer to each other"). Rieder and Rapee signed the Cadbury Operating Agreement. Because Rieder and Rapee were signatories to the Cadbury Operating Agreement, which required them to approve Cadbury's entry into the CQuentia/Cadbury Series Agreement, and because the formation of Cadbury via the Operating Agreement was accomplished for the purpose of entering into a business relationship with CQuentia, enforcement of the forum-selection clause as binding on Rieder and Rapee comports with the legitimate expectations of the parties as reflected in the entirety of their freely negotiated transaction. *Cf. Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 444–45.[24] We hold that under the facts presented here, the CQuentia/Cadbury Series Agreement's forum-selection clause is binding on Rieder and Rapee as transaction participants. Accordingly, we sustain Cross-Appellant Woods's second and third issues.

---

[24]Here, unlike in *Pinto Tech. Ventures, L.P.*, the forum-selection clause does not expressly limit the parties bound by it. *See* 526 S.W.3d at 445 (explaining that forum-selection clause at issue there provided that it "shall inure to the benefit of and be binding upon, the successors, permitted assigns, legatees, distributes, legal representatives and heirs of each party *and is not intended to confer upon any person, other than the parties and their permitted successors and assigns, any rights or remedies hereunder*") (emphasis added).

As for the closely-related doctrine, Rieder and Rapee's close relationship with Cadbury—who is a signatory of the CQuentia/Cadbury Series Agreement—is one of the central disputes between the parties. Rieder and Rapee contend that they are managing board members of Cadbury pursuant to the Cadbury Operating Agreement and that the Cadbury Operating Agreement is valid and binding on Cross-Appellant Woods, Rieder, and Rapee. Cross-Appellant Woods, Intervenor Meeker, and Intervenor CQuentia, on the other hand, contend that the Cadbury managing board members did not approve the CQuentia/Cadbury Series Agreement, so it "was never born." Under either circumstance, Rieder's and Rapee's conduct is closely related to, if not determinative of, the contractual relationship (if any) that exists between CQuentia and Cadbury via the CQuentia/Cadbury Series Agreement. That is, Rieder and Rapee, as two of three managing board members of Cadbury, are so closely related to signatory Cadbury that enforcement of the forum-selection clause against them—to determine issues related to the validity of the CQuentia/Cadbury Series Agreement—is foreseeable by virtue of that relationship. We hold that Intervenors may enforce the CQuentia/Cadbury Series Agreement's forum-selection clause against Rieder and Rapee because they are managing board members of and closely related to signatory Cadbury. We overrule the remainder of Rieder and Rapee's first and second issues asserting that the forum-selection clause is not enforceable against them because they are nonsignatories.

## V. Conclusion

We affirm in part and reverse in part. Having sustained Cross-Appellant Woods's first, second, third, and eighth issues, which are dispositive of his appeal, we reverse the portion of the trial court's order granting Rieder, Rapee, and Cadbury's special appearance as to, and dismissal of, Woods's claims against them. Having overruled Appellants Rieder, Rapee, and Cadbury's three issues, we affirm the trial court's denial of Rieder, Rapee, and Cadbury's special appearance and forum non conveniens motion as to Meeker's and CQuentia's claims. We remand this case to the trial court for further proceedings.

/s/ Sue Walker
Sue Walker
Justice

Delivered: October 18, 2018